# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL PATRICK CONTORNO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 04 C 3448 |
| ) | |
| DANIEL McCANN, TODD KUBISH, ) | Judge Blanche M. Manning |
| SGT. BUDIG, VILLA PARK POLICE ) | |
| JOHN DOE OFFICERS, RAYMOND HESSLER ) | |
| LT. COOK, DU PAGE COUNTY SHERIFF, ) | |
| R & D JOHN DOE OFFICERS ) | |
|   sued in their individual and in their ) | |
|   official capacities, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Plaintiff Michael Patrick Contorno ("Contorno") brings this *pro se* complaint pursuant to 42 U.S.C. §§ 1983, 1985, and 1986. Defendant Raymond Hessler ("Hessler") has filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1), to which Contorno has responded. Defendants Daniel McCann, Todd Kubish, Sgt. Budig, and the Villa Park Police "John Doe" Officers ("Defendants") have filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). On August 25, 2004, Contorno sought leave to submit an amended complaint. On August 31, 2004, the court gave Contorno leave to submit his amended complaint within 30 days. To date, Contorno has not submitted an amended complaint or responded to Defendants' motion to dismiss. Defendant Louis Cook ("Cook") also has filed a motion to dismiss.

## I. Standard of Review on a Motion to Dismiss

The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits. *Gibson v. Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). Federal notice pleading requires only that the plaintiff "set out in her complaint a short and plain statement of the claim that will provide the defendant with fair notice of the claim." *Scott v. City of Chicago*, 195 F.3d 950, 951

(7th Cir. 1999). When ruling on a motion to dismiss, the court assumes that well-pleaded allegations are true and draws all reasonable inferences in the light most favorable to the plaintiff. *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999). This rule has particular force when considering the allegations of a *pro se* complaint, which are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Accordingly, *pro se* complaints are to be liberally construed. *Wilson v. Civil Town of Clayton, Ind.*, 839 F.2d 375, 378 (7th Cir. 1988).

## II. Facts

In line with the foregoing authorities, the following factual statement is drawn from Contorno's complaint.

On the evening of June 25, 2002, at about 10:30 p.m., Contorno was visiting friends when they heard a commotion in the alleyway and stepped outside to investigate. Several uniformed and undercover police officers were in the alley. Two officers had pushed two African-American males against the police cars and were choking them.

As Contorno and his friends walked down the alleyway, two officers stopped them and asked to see their identification. The officers checked for warrants and none showed up; accordingly, Contorno and his friends continued walking through the alleyway. While walking past the officers (whom Contorno identifies as Daniel McCann and Todd Kubish) who were choking the African-American males, Kubish grabbed Contorno and pushed him against a car. Contorno and his friend explained that the other officers told them they were free to go, but McCann told Contorno's friends to leave or they would be charged with obstructing a police officer. The friends then left as ordered.

McCann and Kubish searched Contorno's pants pockets and recovered nothing illegal. They asked him if the cash he had on him ($512) was from crack. Contorno denied that the money was from crack. Contorno was taken to the Villa Park Police Department, and McCann and Kubish questioned him about the cash and whether he was supplying crack in the neighborhood. Contorno was searched again and nothing illegal was found.

2

McCann and Kubish then punched Contorno in the stomach and ribs and choked him. They told him that if he did not give them something, then he would have to pay $75 for unlawful possession of open alcohol and unlawful consumption citations, although Contorno did not have any open alcohol on him when he was taken into custody.

Contorno agreed to post the bond and asked to call his aunt to pick him up. While Contorno was on the phone, Kubish grabbed it and hung it up. McCann and Kubish began striking Contorno in the stomach and ribs and then placed him in a holding cell.

Sgt. Budig took Contorno to get fingerprinted and when Contorno complained, Budig told him to "tell it to the judge and jury, tough guy."

Contorno asked if he could call an attorney but McCann told him that he had already used his phone call. Contorno was searched a third time before McCann and Kubish put him in a vehicle to go to the Du Page County Jail. While en route, McCann and Kubish pulled Contorno out of the car and punched and kicked him in the back, ribs, stomach, face, and head.

At the jail, Contorno told Lt. Cook that he wanted to press charges against McCann and Kubish. Another strip search was conducted but no illegal contraband was recovered. No interrogation concerning the finding of any illegal substance was conducted at that time. Contorno was allowed to post bond for the two drinking citations and an obstructing misdemeanor at about 6:55 a.m. on June 26, 2002.

On August 15, 2002, Contorno appeared in court and was tendered discovery. This discovery included a police report by McCann, which alleged that when Raymond Hessler pat-searched Contorno at the Du Page County Jail, he found a bag containing a small rock-type substance in Contorno's pants leg, which Hessler gave to McCann. Neither McCann nor Kubish were present during the searches conducted on Contorno and neither officer witnessed any illegal substance recovered from Contorno.

McCann and Kubish made a complaint for unlawful possession of a controlled substance against Contorno and issued an arrest warrant. Contorno has been in the custody of the Du Page

3

County Sheriff since September 14, 2002. He was convicted on July 24, 2003 for possession of a controlled substance. The original drinking citations and obstructing a police officer charges were "nolle prossed." Contorno has appealed his conviction, which is currently pending.

Contorno further alleges that when he was initially arrested, defendants did not take him before a bond court judge in order to prevent the judge from seeing the marks and bruises he received as a result of the alleged police brutality. Contorno also claims that the bag was planted on him and that McCann testified under oath that he destroyed the alleged bottle of alcohol. Contorno further alleges that all of the officers' testimony at trial conflicted with their original reports and with their department's policies and procedures. According to Contorno, he suffers from paranoia as a result of the alleged mistreatment, and has since been harassed by police officers from other jurisdictions.

From these alleged facts, Contorno seeks damages for "unreasonable search and seizure, excessive use of force, illegal custodial interrogation, false arrest, official misconduct, compelling information by threat of force, threat, conspiracy, chain of custody, unauthorized bringing contraband into a penal institution, obstructing justice, refusal to make attorney calls, refusal to post bond, due process violations, assault and battery, deliberate indifference to medical needs, failure to follow department policies, negligence, violation of due process access to the courts, and perjury."

### III. Analysis

#### A.  Defendant Raymond Hessler's Motion to Dismiss

Hessler argues that Contorno's claim that Hessler planted a controlled substance on him during a search at the Du Page County Jail is barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), in which the United States Supreme Court held that:

> . . . in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a §1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. §2254. A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under §1983. . . . .

4

Contorno acknowledges that he was convicted of possession of a controlled substance in *People v. Contorno*, No. 02 CF 2561, in the Circuit Court of the Eighteenth Judicial Circuit, Du Page County, Illinois, and that this case is currently on appeal to the Illinois Appellate Court. The court therefore agrees that this claim is barred by *Heck* because if Hessler planted the controlled substance on Contorno, proof of such action would undoubtedly undermine his conviction.

In response, Contorno argues that Hessler has overlooked that he is also making claims for "conspiracy, perjury, chain of custody, constitutional violations for denial of due process access to the courts, denial of a due process hearing for the withholding of a disciplinary hearing on the incident of finding the contraband (a jail ticket was drawn up but no hearing held), an unreasonable strip search, and failure to inform Contorno that a bag was recovered from his person."

Those are a lot of claims to read into Contorno's statement in his complaint at p. 14:

> 44. The plaintiff appeared before the Honorable Judge presiding in Courtroom 4010 on August 15, 2002 and was tendered discovery that alleged in a police report by defendant McCann that when the plaintiff was being pat searched by Raymond Hessler at the Du Page County Jail a bag containing a small rock type substance was found from his pants leg and that the substance was given to defendant McCann by Raymond Hessler.

Nonetheless, because Contorno is *pro se*, the court will consider his claims. Contorno's claims as to conspiracy, perjury, and [breaking the] chain of custody appear to be directed toward Hessler's finding of the controlled substance on Contorno. If Hessler conspired to plant the substance on Contorno, lied about it, and broke the chain of custody, then Contorno's conviction could be undermined. These claims are barred by *Heck*.

However, Hessler's *Heck* argument sweeps too broadly. The *Heck* Court qualified its holding, explaining that "a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a ... trial resulting in the ... conviction." *Heck*, 486 at 487, n. 7. The Seventh Circuit has taken an extremely narrow view of the preclusive effect that *Heck* has when applied to unlawful search claims. In *Copus v. City of Edgerton*, 151 F.3d 646, 648 (7th Cir. 1998), the court of appeals made very clear that "Fourth Amendment claims for unlawful searches or arrests do not necessarily imply a conviction is invalid,

5

so in all cases these claims can go forward."

The court accordingly denies Hessler's motion to dismiss in regard to the allegations of an unreasonable strip search and failure to inform Contorno that a bag was recovered from his person.

Contorno has given no facts regarding his claim that Hessler denied him due process as to access to the courts. Contorno has given no facts regarding his claim that Hessler denied him due process because there was no hearing on the jail ticket that was issued in regard to finding contraband. It is not the place of the court to make Contorno's case for him. However, because he is *pro se*, the court will give him 30 days to submit a statement explaining concisely and clearly how Hessler denied him access to the courts and how Hessler denied him due process in regard to the ticket that was written. If Contorno does not submit this statement within 30 days, then these claims will be dismissed.

In sum, the court grants Hessler's motion to dismiss as to those claims that are barred by *Heck*. The court denies Hessler's motion to dismiss as to Contorno's claims of an unreasonable strip search and failure to inform that a bag was recovered from his person.

### B. Defendants Daniel McCann, Todd Kubish, Sgt. Budig, and Villa Park Police "John Doe" Officers' Motion to Dismiss

#### 1. Defendants McCann and Kubish

Defendants McCann, Kubish, Budig, and Villa Park Police "John Doe" Officers also argue that *Heck* bars Contorno's claims. The court agrees that Contorno's claims that McCann and Kubish planted the controlled substance on him and Contorno's vague allegations of conspiracy, breaking the chain of custody, and perjury are barred by *Heck*.

However, as discussed above, Contorno's claims as to an unlawful search and seizure and unlawful arrest are not barred by *Heck*.

Defendants next argue that they are entitled to qualified immunity for Contorno's claims of unlawful arrest and excessive force. Qualified immunity shields state actors from damages resulting from liability for constitutional violations if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818 (1982). However, in *Graham v. Connor*, 490 U.S. 386, 394-95 (1989), the Supreme Court held that claims that law enforcement officials used excessive force in the course of an arrest, investigatory stop, or other "seizure" of a free citizen are to be analyzed under the Fourth Amendment's "reasonableness" standard. A claim of excessive force in the course of an arrest has therefore long been recognized as a violation of the Fourth Amendment. McCann and Kubish are accordingly not entitled to qualified immunity as to the excessive force claim. Moreover, the Seventh Circuit has held that an excessive use of force claim is typically not *Heck*-barred because success on such a claim would not necessarily invalidate the underlying conviction. *See Robinson v. Doe*, 272 F.3d 921, 823 (7th Cir. 2001).

In the false arrest context, an officer is entitled to qualified immunity if a reasonable officer in the defendant's position could have mistakenly believed that probable cause existed. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991). This is sometimes referred to as "'arguable' probable cause." *See, e.g., Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998). Defendants argue that probable cause existed because Contorno was later convicted of the greatest offense for which he was arrested.

In the instant case Contorno claims that he and his friend had co-operated with police and their identification had been checked for warrants. Kubish then grabbed Contorno and refused to listen to his explanation. Both Kubish and McCann then searched Contorno, found nothing illegal, but still took him to the police station for questioning. Based on these facts, which the court must accept as true on a motion to dismiss, it is entirely possible that the requisite probable cause for the original stop and seizure of Contorno was lacking although he was ultimately found guilty to a charge derived in part (or for that matter entirely) from the seizure of contraband in the course of a related search. The Defendants are therefore not entitled to qualified immunity based on these facts, although a more developed record may confer qualified immunity on Defendants.

Moreover, the Seventh Circuit has held that a false arrest claim "does not inevitably undermine a conviction" because "one can have a successful wrongful arrest claim and still have a perfectly valid conviction." *Booker v. Ward*, 94 F.3d 1052, 1056 (7th Cir.1996); *Cordero v. Bobko*,

7

No. 94 C 6807, 1995 WL 221879, at *1 (N.D. Ill., April 12, 1995).

As noted earlier, the purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits. *Gibson*, 910 F.2d at 1520. Whether or not the officers had probable cause to arrest Contorno, whether or not the searches were lawful, and whether or not the use of force was reasonable under the circumstances are questions of fact which cannot be determined on a motion to dismiss. The court accordingly denies Defendants' motion to dismiss on these claims.

Defendants argue that Contorno's state law claims of intentional infliction of emotional distress, false imprisonment, battery, assault, malicious prosecution, and false arrest are barred by the Illinois Local Governmental and Governmental Employees Tort Immunity Act ("Act"). This Act governs the time period in which such claims may be filed and provides that "no civil action may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued." 745 ILCS 10/8-101. Defendants were employees of either the Villa Park Police Department or the Du Page County Jail and acting within the scope of their employment and under color of law at the time Contorno's rights allegedly were violated. Therefore, the Act applies to Contorno's state tort claims

Because the events underlying Contorno's state law claims happened on June 25-26, 2002, he had until June 25-26, 2003, to file any state law claims that accrued at the time of his arrest. The Clerk of the Court received Contorno's complaint on May 17, 2004, almost two years after the alleged events. The court accordingly finds that Contorno's state law claims are time-barred and dismisses all the state law claims against all defendants.

## 2. Defendant Sgt. Budig

Although Defendants have included Sgt. Budig in their *Heck* argument, Contorno clearly has not stated a claim against Budig. His sole references to Budig are in ¶¶ 29 and 30 of the complaint in which he states that Budig took him to be fingerprinted and when Contorno complained, Budig told him to "tell it to the judge and jury, tough guy." Fingerprinting a detainee is an administrative

8

step incident to an arrest. *See Hood v. City of Chicago*, 927 F.2d 312, 315 (7th Cir. 1991). Budig had nothing to do with Contorno's alleged unreasonable search and seizure and false arrest by McCann and Kubish. He was merely following administrative procedures after Contorno was brought to the station. The court accordingly dismisses Budig from this action.

In sum, the court grants Defendants' motion to dismiss as to Contorno's claims that they planted the controlled substance on him and Contorno's vague allegations of conspiracy, breaking the chain of custody, and perjury and in regard to all state law claims. The court denies Defendants' motion to dismiss as to Contorno's claims of unreasonable search and seizure, excessive use of force, and false arrest. The court dismisses Budig from this action.

## C. Defendant Louis Cook's Motion to Dismiss

Defendant Cook also argues that *Heck* bars all claims against him. However, the only statement Contorno makes in regard to Cook is his allegation that he told Lt. Cook that he wanted to press charges against McCann and Kubish (Plaintiff's complaint, ¶ 37), which does not fit into the *Heck* scenario. Contorno does not give Cook's response to his request to press charges; nonetheless, he has failed to state a claim. Only the State's Attorney has the authority to prosecute and to determine when and what to prosecute. Lt. Cook, not being an assistant state's attorney, did not have standing to compel prosecution of Contorno's complaints. *See Leeke v. Timmerman*, 454 U.S. 83 (1981); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). The court therefore grants Lt. Cook's motion to dismiss and dismisses him from this action.

## D. Other Issues

### 1. Individual and Official Capacities

Although none of the defendants addressed Contorno's claim that he is suing the defendants in both their individual and official capacities, the court will consider it.

An official capacity claim is, in essence, a claim against the governmental entity that employs the defendant. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Chortek v. Milwaukee*, 356 F.3d 740, 748 n.4 (7th Cir. 2004). A local governmental entity is liable for damages only if a plaintiff can

show that the alleged constitutional deprivation occurred as a result of an official policy, custom, or practice. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978) *Chortek*, 356 F.3d at 748.

The Seventh Circuit has determined that a municipality can be said to have violated the rights of a person because of its policy when a widespread practice, although not authorized by written law or express municipal policy, is "so permanent and well settled as to constitute a custom or usage with the force of law." *Baxter by Baxter v. Vigo County School Corp.*, 26 F.3d 728, 735 (7th Cir. 1994) (internal quotation marks and citation omitted). Contorno has not alleged that either the Villa Park Police Department or the Du Page County Jail had any expressed policy that caused or contributed to the alleged illegal arrest and searches nor has Contorno alleged a custom or usage with force of law that caused or condoned the alleged constitutional violations. *See, e.g., Garrison v. Burke*, 165 F.3d 565, 571 (7th Cir. 1999) (collecting cases). *See also Jackson v. Marion County*, 66 F.3d 151, 152 (7th Cir. 1995) (a single act of misconduct will not suffice to show the requisite policy or custom). In fact, Contorno states in his preliminary statement that he is suing defendants for "failure to follow department policies... ." (Complaint at p. 7.)

The court accordingly finds that none of the defendants can be held liable in their official capacity. However, they may be liable in their individual capacity because they caused or participated in the alleged constitutional deprivations. *Vance v. Washington*, 97 F.3d 987, 991 (7th Cir. 1996); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995); *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir. 1986) (*citing Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983)).

## 2. Contorno's § 1985 and § 1986 Claims

In addition to filing this action pursuant to 42 U.S.C. § 1983, Contorno states that he is also bringing it under 42 U.S.C. §§ 1985 and 1986.

To prevail under § 1985(3), there must to a showing of a conspiracy to deprive a person or class thereof of the "equal enjoyment of rights secured by law to all." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). To prevent § 1985(3) from being converted into a "general federal tort law," *id.*, there must be some "racial, or perhaps otherwise class-based, invidiously discriminatory animus"

behind the conspirator's actions. *Id.* Contorno has not alleged that the defendants stopped and searched him and used excessive force on him because of racial animus. He therefore has failed to state a claim under § 1985(3). *See Roach v. City of Evansville*, 111 F.3d 544, 547 (7th Cir. 1997); *Bowman v. City of Franklin*, 980 F.2d 1104, 1109 (7th Cir. 1992) (a § 1985(3) plaintiff must allege racially motivated discriminatory animus).

Because liability under § 1986, for neglecting to prevent the conspired wrongs mentioned in § 1985, is derivative of liability under § 1985, *Perkins v. Silverstein*, 939 F.2d 463, 472 (7th Cir. 1991), Contorno's claims as to § 1986 also fail. The court accordingly dismisses Contorno's claims under §§ 1985 and 1986.

### 3. Abstention Doctrine

Contorno is currently appealing his conviction. The court therefore finds that it must abstain from making any further decisions in this action until Contorno's pending state criminal proceedings are resolved. *See Younger v. Harris*, 401 U.S. 37 (1971); *Simpson v. Rowan*, 73 F.3d 134, 137 (7th Cir. 1995), *citing Samuels v. Mackell*, 401 U.S. 66 (1971); *Hudson v. Chicago Police Dept.*, 860 F.Supp. 521, 523 (N.D. Ill. 1994) (federal courts should not entertain claims for damages, injunctive, or declaratory relief, if disposition of the civil action would involve ruling on issues that could be raised in the state proceeding). The court accordingly stays this action in regard to Contorno's claims that Hessler unreasonably strip searched him and failed to inform him that a bag had been recovered from his person and Contorno's claims that McCann and Kubish unreasonably searched and seized him, used excessive force, and falsely arrested him.

### IV. Conclusion

The court grants Hessler's motion to dismiss as to the claims of conspiracy, perjury, breaking the chain of custody, and planting the controlled substance as being barred by *Heck*. The court denies Hessler's motion to dismiss as to Contorno's claims of an unreasonable strip search and failure to inform him that a bag was recovered from his person. The court grants Defendants' motion to dismiss as to Contorno's claims that they planted the controlled substance on him and allegations

11

of conspiracy, breaking the chain of custody, and perjury. The court denies Defendants' motion to dismiss as to Contorno's claims of unreasonable search and seizure, excessive use of force, and false arrest. The court dismisses all the state law claims against all defendants as time barred. The court dismisses all official capacity claims against all defendants. The court dismisses Contorno's claims under §§ 1985 and 1986. The court stays this action pending the resolution of Contorno's state criminal proceedings as to Contorno's claims that defendant Hessler unreasonably strip searched him and failed to inform him that a bag was recovered and Contorno's claims against McCann and Kubish of unreasonable search and seizure, excessive use of force, and false arrest. The court dismisses Sgt. Budig from this action for failure to state a claim. The court grants Lt. Cook's motion to dismiss and dismisses him from this action.

ENTER:

*Blanche M. Manning*
Blanche M. Manning
United States District Court Judge

Dated: 2-2-05