**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL PATRICK CONTORNO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 04 C 3448 |
| v. | ) | |
| | ) | Judge Blanche M. Manning |
| DANIEL McCANN, TODD KUBISH, | ) | |
| SGT. BUDIG, VILLA PARK POLICE | ) | |
| JOHN DOE OFFICERS, RAYMOND | ) | |
| HESSLER, LT. COOK, DuPAGE | ) | |
| COUNTY SHERIFF R&D OFFICERS | ) | |
| AND JOHN DOE OFFICERS sued in their | ) | |
| individual and in the official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Michael Patrick Contorno ("Contorno") brings this first amended complaint

("FAC"), by and through his attorneys, pursuant to 42 U.S.C. § 1983.  Defendants Daniel

McCann, Todd Kubish, Sgt. Budig, and the Villa Park Police John Doe Officers ("McCann

Defendants") have filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) ("McCann

Motion").  Defendants Raymond Hessler and Lt. Cook have filed a separate motion to dismiss

pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) ("Hessler Motion").[1]  Contorno has responded

to both motions.  For the reasons stated herein, both the McCann Motion and the Hessler Motion

[75-1, 78-1] are granted in part and denied in part.

## I.      Standard of Review on a Motion to Dismiss

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the

---

[1] Defendants DuPage County Sheriff R&D Officers and John Doe Officers have not filed
a motion to dismiss.  However, any reference to the "Hessler Defendants" includes defendants
Hessler, Cook, DuPage County Sheriff R&D Officers and John Doe Officers.

complaint, not to decide the merits. *Gibson v. Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990).

Dismissal is properly granted if it is clear that no set of facts which plaintiff could prove

consistent with the pleadings would entitle plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45-

46 (1957). When ruling on a motion to dismiss, the court assumes that well-pleaded allegations

are true and draws all reasonable inferences in a light most favorable to the plaintiff. *Henderson*

*v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999).

## II.    Facts

In line with the foregoing authorities, the following factual statement is drawn from

Contorno's complaint. On June 25, 2002 at approximately 10:30 p.m., Contorno was visiting

James Current in Villa Park when he heard a commotion in the neighboring alley. Contorno,

Current and an unidentified female went into the alley, where they saw several uniformed and

undercover police officers. Two of the undercover officers (whom Contorno identifies as Daniel

McCann and Todd Kubish) were choking and pushing two African-American males. Contorno,

Current and the female friend walked through the alley toward the officers. Two officers

approached them, requested identification, and checked the police computer for existing

warrants. No warrants were found. Contorno, Current and the friend resumed walking toward

McCann and Kubish.

Kubish grabbed Contorno and pushed him against a car. McCann and Kubish, who were

familiar with Contorno, searched Contorno's pants pockets and recovered $512.00 in cash. They

asked Contorno whether the money came from the sale of crack, which Contorno denied.

McCann brought Contorno to the station, where he was questioned about the $512.00. The

interrogation turned violent, and McCann and Kubish punched and choked Contorno.

Contorno was charged with unlawful possession of open alcohol and obstructing a police officer. Contorno agreed to post bond and called his aunt to arrange for a ride home. On the phone, Contorno told his aunt that the charges were unfounded and that he had suffered police brutality. During the conversation, Kubish took the phone from Contorno and hung it up. McCann and Kubish again struck Contorno in the stomach and ribs. Contorno informed Sargent Budig that he had been attacked by McCann and Kubish. Budig responded, "tell it to the judge and jury tough guy."

Contorno requested permission to call an attorney, but McCann denied his request, stating that he had already used his phone call. Contorno alleges the existence of a policy whereby those in custody whose names are in the L.E.A.D.S.[2] files, are transported to the DuPage County Jail for a bond hearing. In accordance with this policy, McCann and Kubish escorted Contorno to the DuPage County Jail. In route to the DuPage County Jail, McCann and Kubish stopped the car, pulled Contorno's shirt over his head, and punched and kicked him for two to four minutes.

At the jail, officers performed a strip search of Contorno. He alleges that police officers planted a controlled substance on his person, which was then discovered during a subsequent search. After searching Contorno, Hessler created a jail ticket describing the controlled substance that he found on Contorno's person. Hessler made no arrangements for a bond hearing regarding the ticket. Contorno was allowed to post bond of $115.00 at approximately 6:55 a.m. on June 26, 2002, the morning after his alleged confrontation with the police and subsequent arrest. Contorno alleges a police conspiracy by which the police prevented Contorno from receiving a bond hearing before a judge because they were fearful of the judge seeing the marks

---

[2]The FAC fails to state what the acronym "L.E.A.D.S." stands for.

and bruises from the police brutality.

On August 15, 2002, Contorno appeared in court and was tendered discovery including McCann's police report. In the report, McCann states that Hessler seized a small rock type substance from Contorno's pants leg. The FAC alleges that while the DuPage County Sheriff did not charge Contorno with possession of a controlled substance, McCann and Kubish made a complaint against Contorno for unlawful possession of a controlled substance and received a warrant for his arrest. Contorno was charged with possession of a controlled substance on or about June 26, 2002. Contorno was placed in the custody of the DuPage County Sheriff on September 14, 2002. A jury convicted Contorno of the unlawful possession of a controlled substance on July 24, 2003. At some point, the original open alcohol and obstruction charges received an entry of *nolle prosequi*.

As a result of the foregoing factual allegations, Contorno has alleged five counts. Count I is a § 1983 claim related to charges of unlawful possession of open alcohol and obstruction of a police officer, alleging against Defendants McCann and Kubish: (1) deprivation of right to counsel; (2) deprivation of due process and equal protection, (3) failure to intervene, (4) delay in posting bond; (5) unreasonable search and unlawful arrest due to lack of probable cause; and (6) excessive force. Count I further alleges claims against Defendants Sgt. Budig, and Villa Park John Doe Officers for: (1) unreasonable search and seizure; (2) failure to intervene; (3) deprivation of equal protection under the Fourteenth Amendment; (4) and delay in posting bond. Count I also alleges the following claims against the Hessler Defendants: (1) unreasonable search and seizure; and (2) delay in posting bond.

Count II is an Illinois state law claim against Defendants McCann and Kubish for false

arrest related to the charges for possession of open alcohol and obstruction of a police officer.

Count III is an Illinois state law claim against Defendants McCann and Kubish for malicious prosecution related to the charges for possession of open alcohol and obstruction of a police officer.

Count IV is a § 1983 claim related to a conviction for unlawful possession of a controlled substance. As against the Hessler Defendants, Contorno alleges: (1) unreasonable search and seizure, (2) failure to inform Contorno in a reasonable time that a controlled substance was found on his person, and (3) unspecified violations of due process under the Fourth and Fourteenth amendments.[3]

Count V is an Illinois state law false arrest claim against the Hessler Defendants related to Contorno's conviction for possession of a controlled substance.

## III. Analysis

### A. Count I: Section 1983 claims related to charges of unlawful possession of open alcohol and obstruction

42 U.S.C. § 1983 permits citizens of the United States to sue those who "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia . . ." deprives a citizen of "any rights, privileges, or immunities secured by the Constitution and laws."

    1.   <u>Defendants McCann, Kubish, Sgt. Budig and Villa Park John Doe Officers</u>

---

[3]Count IV realleges and incorporates by reference paragraphs 1 through 100 of Count I. The court construes this incorporation to refer only to the factual allegations as stated in those paragraphs. The prayer for relief as to Count IV names only Hessler, Cook, Du Page County Sheriff R&D Officers and John Doe Officers. Accordingly, the court construes Count IV to be alleged against only those defendants and as alleging only those causes of action as stated in paragraph 102 of the FAC.

          a)     *Deprivation of right to counsel, deprivation of rights to due process and equal protection, failure to intervene, delay in posting bond*

Count I of the FAC relates only to the charges against Contorno for unlawful possession of open alcohol and obstruction. Defendants McCann and Kubish move to dismiss the above-identified federal claims as barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Under *Heck*, "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck*, 512 U.S. at 487. The plaintiff responds that *Heck* does not apply to the claims in Count I because the open alcohol and obstruction charges did not lead to a conviction.

McCann and Kubish fail to provide any relevant analysis or authority for the position that the § 1983 claims at issue (unspecified due process and equal protection violations, failure to intervene, delay in posting bond, and deprivation of right to counsel), if successful, necessarily imply the invalidity of convictions for unlawful possession of open alcohol and obstruction of police. Nevertheless, the court agrees that *Heck* is inapplicable because there is no conviction at issue to have overturned or expunge. Nor do McCann and Kubish contend that these charges are in any way "pending" such that *Heck* might apply. *Washington v. Summerville*, 127 F.3d 552, 556 (7th Cir. 1997)(in addressing whether *Heck* applies to a conviction on a pending charge stating that "we must ask initially whether Washington's unlawful arrest and excessive force claims, if successful, would necessarily imply the invalidity of a *potential* conviction on the murder charge against him.")(emphasis added). As noted, the unlawful possession of alcohol

and obstruction charges were dismissed pursuant to a nolle prosequi, which is not a final disposition; rather it "is a procedure which restores the matter to the same state which existed before the Government initiated the prosecution." *Id.* at 557 (citation omitted). As such, the court denies the McCann Defendants' motion to dismiss these claims based on *Heck*.

In their reply, the McCann Defendants assert for the first time that the federal claims are "unripe" since there was no final disposition of the open alcohol and obstruction charges. *Clay v. Allen*, 242 F.3d 679, 681 n.1 (7th Cir. 1997)(citing *Washington v. Summerville*, 127 F.3d 552 (7th Cir. 1997)). As noted above, the open alcohol and obstruction charges were *nolle prossed*. The defendants argue that because the charges were *nolle prossed*, the federal claims are "unripe" unless the plaintiff can show that the *nolle prosequi* was entered for reasons indicative of the plaintiff's innocence, citing *Washington*, 127 F.3d at 557, in support. However, *Washington* addressed the relevance of the entry of a *nolle prosequi* in the context of a state law claim for malicious prosecution. *Id.* ("The issue before us is whether the nolle prosequi of a criminal charge constitutes a favorable termination in a [state law] malicious prosecution action."). One of the elements of such a claim is that the criminal proceeding terminated in the plaintiff's favor. *Washington*, 127 F.3d at 157 (citation omitted). Here, however, the court is not addressing a state law claim for malicious prosecution. Thus, because it is not clear how *Washington* supports a conclusion that the § 1983 claim is unripe, the motion to dismiss on this basis is denied.

> b)      *Unreasonable search, unlawful arrest, excessive force*

The McCann Defendants next assert a qualified immunity defense with respect to

Contorno's claims for unreasonable search, unlawful arrest, and excessive force.[4]  According to the McCann Defendants, they performed a valid Terry stop and had probable cause to search and arrest Contorno because they recognized him as an habitual offender (which was purportedly confirmed by his placement in the L.E.A.D.S. system).

Qualified immunity shields state actors from damages resulting from liability for constitutional violations if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity is "designed to shield from civil liability 'all but the plainly incompetent or those who knowingly violate the law.'" *Hughes v. Meyer*, 880 F.2d 967, 971 (7th Cir. 1989).  To determine qualified immunity in the context of a motion to dismiss, the court examines whether (1) the complaint adequately alleges facts that, if true, constitute a violation of a constitutional right, and (2) that constitutional right was clearly established at the time of the alleged violation. *Kiddy-Brown v. Blagojevich*, 408 F.3d 346, 353 (7th Cir. 2005).

In the instant case, Contorno claims that he and his friend had cooperated with police, and their identification had been checked for warrants.  After cooperating, Kubish grabbed Contorno, allegedly without reason or provocation.  Both Kubish and McCann searched Contorno, found nothing illegal, but still took him to the police station for questioning.  At the Villa Park police station, he was allegedly threatened and physically assaulted and then charged with unlawful possession of open alcohol and obstruction even though, he alleges, he did not have any alcohol

---

[4]Despite the fact that the McCann Defendants separate their qualified immunity discussion into various sections, including those entitled "good faith," "qualified immunity in the context of search and seizure," "probable cause", and "the officers performed a valid Terry stop," the court understands these all to be addressing the same qualified immunity defense.

in his possession at the time he was confronted and did not obstruct a police officer.   When

Contorno called his family to post bond for him and pick him up, McCann and Kubish allegedly

grabbed the phone from him and again began beating him.   He further alleges that while they

were taking him to the DuPage County Jail for bond court, McCann and Kubish pulled the car

over to beat him for a third time.

Based on these allegations, which the court must accept as true on a motion to dismiss,

and without considering any facts outside the four corners of the complaint,[5] it is entirely

possible that the requisite reasonable suspicion for the original stop and probable cause for the

subsequent search and arrest of Contorno was lacking, and that excessive force was used during

Contorno's arrest and interrogation.   Thus, viewing the facts in a light most favorable to

Contorno, he has stated claims for violations of his Fourth Amendment rights to be free of

unreasonable search and seizure as well as excessive force, rights which were clearly established

at the time of the alleged conduct.   The McCann Defendants' assertion that they are entitled to

---

[5]The court denies the McCann Defendants' request to make a determination on the validity of the purported Terry stop and whether probable cause existed to search and arrest Contorno using facts outside the FAC (i.e., Contorno's "unorthodox approach" of the arresting officers, Contorno's reputation, and the officers' recognition of him), given that the court cannot consider facts outside of the complaint on a Rule 12(b)(6) motion.  Moreover, the court notes that the McCann Defendants' assertion that "Plaintiff has failed to set forth facts to support the claim that defendants lacked reasonable belief as to probable cause to perform the subject arrest such that qualified immunity should not be abrogated under the relevant case law in the Seventh Circuit," McCann Defendants' Motion to Dismiss at 8, is inapposite.  At this stage of the litigation, the plaintiff need only avoid pleading himself out of court.  If the facts as alleged in the complaint do not establish a definitive basis for concluding that the officers are entitled to qualified immunity, then the motion to dismiss on this ground must be denied.  *See, e.g., Holm v. Village of Coal City*, 05 C 3910, 2007 WL 495284, at *14 (N.D. Ill. Feb. 13, 2007)(although defendants did not move for qualified immunity finding on plaintiff's allegations, noting that such a finding "seemingly would have been foreclosed" given that the plaintiffs' "sweeping" allegations must be accepted as true at motion to dismiss stage even for purposes of qualified immunity inquiry).

qualified immunity is therefore denied.

2. <u>Defendants Hessler and Cook</u>

Count I of the FAC asserts that Hessler and Cook are liable under § 1983 for unreasonable search and seizure of Contorno as well as delaying Contorno in posting bond.   The latter allegation appears to be based both on Hessler and Cook's individual capacities as well as their official capacities pursuant to an alleged municipal policy that persons who are in the L.E.A.D.S. file must first be taken in for a bond hearing prior to posting bond, thus causing the alleged unconstitutional delay in posting bond.

a)   *Unreasonable search and seizure*

Defendants Hessler and Cook do not address Count I's § 1983 claims against them for unreasonable search and seizure, but rather focus entirely on the alleged delay in posting bond. Therefore, the court does not construe the Hessler Motion to pertain to Count I's claims for unreasonable search and seizure against Hessler and Cook.  Therefore, this part of Count I against them remains.

b)   *Delay in posting bond*

Although not specifically pled, the court understands Contorno's claim based on an alleged delay in posting bond to be a due process claim.  *Rodgers v. Lincoln Towing Service Inc.*, 771 F.2d 194, 198 (7th Cir. 1985) (finding that a § 1983 claim alleging unreasonable delay in posting bail amounted to a substantive due process claim).

Defendants argue that the FAC alleges insufficient facts to apprise them of the claims against them, either in their official or individual capacities.  Specifically, Hessler and Cook note that the FAC fails to allege that they followed an official policy, advised anyone at the police

department that Contorno had been entered into the L.E.A.D.S. files, or informed anyone that Contorno had to be taken to jail or to bond court.

Under Fed. R. Civ. P. (8)(a), Contorno's burden is to submit "a short and plain statement of the claim showing that [he] is entitled to relief." Indeed, the Seventh Circuit has stated that, the exceptions in Fed. R. Civ. P. 9 notwithstanding, "a plaintiff in a suit in federal court need not plead facts; he can plead conclusions." *Jackson v. Marion County*, 66 F.3d 151, 153 (7th Cir. 1995). An official capacity claim is, in essence, a claim against the governmental entity that employs the defendant. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *Chortek v. Milwaukee*, 356 F.3d 740, 748 n.4 (7th Cir. 2004). A local governmental entity is liable for damages only if a plaintiff can show that the alleged constitutional deprivation occurred as a result of an official policy, custom, or practice. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978); *Chortek*, 356 F.3d at 748.

As with § 1983 claims against individuals, there is no heightened pleading standard under *Monell*. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993); *Marcavage v. City of Chicago*, 467 F. Supp. 2d 823, 828 (N.D. Ill. 2006). To assert a *Monell* claim, the plaintiff need only allege a "short and plain statement showing that the pleader is entitled to relief." *Leatherman,* 507 U.S. at 168 (citation omitted).

Contorno has met his burden under the notice pleading standard. The FAC specifically alleges that Hessler and Cook "delayed Plaintiff in posting bond by following a policy regarding persons being placed in Leads files." (FAC ¶ 100). Moreover, Contorno has alleged that Hessler never made arrangements for a bond hearing, and that Hessler delayed Contorno in posting bond. (FAC ¶¶ 63, 65). Moreover, Contorno has plainly alleged that Cook prevented Contorno from

posting bond in a reasonable time period. (FAC ¶¶ 71, 72). Contorno has also alleged that Hessler and Cook delayed his posting of bond by following a policy whereby persons in the L.E.A.D.S. files are taken to the DuPage County Jail for a bond hearing. (FAC ¶¶ 65 and 73). Because these allegations meet the burden of Fed. R. Civ. P. (8)(a) to apprise the defendants of the claims against them in both their official and individual capacities, Hessler and Cook's motion to dismiss Count I against them is denied.

**B.    Count IV: Section 1983 claims related to conviction of unlawful possession of controlled substance against Defendants Hessler and Cook[6]**

In Count IV, Contorno asserts § 1983 claims against the Hessler Defendants related to his conviction of unlawful possession of a controlled substance based on the fact that they: (1) "unreasonably searched and seized him"; (2) "failed to inform him in a reasonable time that a controlled substance was found on him on June 26, 2002," and; (3) "violated his due process rights under the Fourth and Fourteenth Amendments." Hessler and Cook argue that Count IV should be dismissed under *Heck*.

Frankly, the court is puzzled by Contorno's assertion that the Hessler defendants "unreasonably searched and seized him." From what the court can tell, Contorno is alleging a false arrest claim. To the extent that the claims relate to the allegation that Hessler and Cook illegally planted the drugs on him, then the court agrees that the claims, if successful, necessarily imply the invalidity of Contorno's conviction and they must be dismissed under *Heck*. *See e.g.*,

---

[6]The McCann Defendants motion to dismiss includes arguments aimed at alleged constitutional violations associated with the conviction for unlawful possession of a controlled substance. Only Count IV seeks a remedy for such alleged violations. However, as noted in footnote 2, the court does not construe the FAC to allege any claims against the McCann Defendants in Count IV. Thus, the court disregards the McCann Defendants' arguments as they relate to Count IV and addresses only the arguments made by Hessler & Cook as to Count IV.

*Wiley v. City of Chicago*, 361 F.3d 994, 997 (7th Cir. 2004)("If, as alleged, Wiley was arrested and prosecuted solely on the basis of drugs planted by the arresting officers, then any attack on the arrest would necessarily challenge the legality of a prosecution premised on the planted drugs.").

Further, to the extent that Contorno alleges that the Hessler Defendants violated his due process rights by failing to inform him in a reasonable time that a controlled substance had been found on him and such a due process claim exists, the court does not see how such a claim necessarily implies the invalidity of his conviction nor do Hessler and Cook provide any authority on this issue. Thus, this aspect of Count IV survives.

Finally, the court notes that Contorno makes an unspecified "due process" claim for purported violations of his rights under the Fourth (if any exist) and Fourteenth Amendments. The parties do not address these unspecified claims and so neither does the court.

### C. Counts II and V: State law claims for false arrest regarding the charges of unlawful possession of open alcohol, obstruction of a police officer, and unlawful possession of a controlled substance

The McCann Defendants next move to dismiss the state law claim for false arrest under Count II on the ground that it is barred by the statute of limitations. Count V also contains a state law claim for false arrest against the Hessler Defendants related to the arrest for unlawful possession of a controlled substance. Hessler and Cook, however, do not raise the statute of limitations in their motion to dismiss and contend only that other facts (not related to the statute of limitations) as pled by Contorno undermine the false arrest allegations.

A plaintiff may plead himself out of court by including allegations that establish that judgment should be entered in the defendant's favor. *Jackson v. Marion County,* 66 F.3d 151,

153 (7th Cir. 1995) (stating that a "plaintiff can plead himself out of court by alleging facts which show that he has no claim, even though he was not required to allege those facts"). *See also Fells v. County of DuPage*, 06 C 2519, 2006 WL 3692414, at *6 (N.D. Ill. Dec. 12, 2006)(because plaintiff attached the incident report from the DuPage County Sheriff's Office to his complaint which gave the date of the arrest, the court sua sponte dismissed the state law false arrest claim as being barred by the statute of limitations).

Here, Contorno alleges that "McCann and Kubish made a complaint for unlawful possession of a controlled substance. . .and a warrant was put out for [Contorno's] arrest. Plaintiff was placed in custody of the DuPage County Sheriff on 9-14-02." FAC at ¶¶82-83. He later alleges that he was falsely arrested by Hessler, Cook, the DuPage County Sheriff and John Doe Officers regarding the unlawful possession of a controlled substance. FAC at ¶¶101. Because the plaintiff has included allegations upon which the court can determine that the Hessler Defendants are entitled to judgment, it will address the statute of limitations as to Hessler, Cook, the DuPage County Sheriff and the John Doe Officers in addition to the McCann Defendants.

The Illinois Local Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act") states:

> (a) No civil action other than an action described in subsection (b) may be commenced in any court against a local entity or any of its employees for any injury unless it is commenced within one year from the date that the injury was received or the cause of action accrued . . . . (c) For purposes of this Article, the term "civil action" includes any action, whether based upon the common law or statutes or Constitution of this State.

745 Ill. Comp. Stat. 10/8-101. Contorno's state law false arrest claims accrued on the date of the arrest. *Day v. Conwell*, 244 F. Supp. 2d 961, 964 (N.D. Ill. 2003)(generally, Illinois state law

claim for false arrest accrues on date of arrest when plaintiff should reasonably be aware that defendant lacked a reasonable basis for arresting plaintiff on the date of the arrest)(citations omitted). According to the FAC, the relevant arrests for unlawful possession of open alcohol and obstruction of a police officer occurred on June 25, 2002 while the alleged false arrest for the unlawful possession of a controlled substance occurred on September 14, 2002. (FAC at ¶ 8). Contorno filed his original complaint on May 17, 2004, well after the one-year limitations periods expired on June 25, 2003 and September 14, 2003, respectively.

Contorno has not addressed the statutory bar issue in his response to the motion to dismiss. Nevertheless, the court finds that both of the state law false arrest claims (Counts II and V) are barred by the limitations period provided in the Tort Immunity Act and thus are dismissed. Because the court dismisses Count V, the court need not address the other ground upon which Hessler and Cook seek to dismiss Count V.

**D.      Count III: State law claims for malicious prosecution regarding the charges of unlawful possession of open alcohol and obstruction of a police officer**

Count III of the FAC contains a state law claim for malicious prosecution against Defendants McCann and Kubish. Defendants McCann and Kubish assert that Contorno's pleadings are insufficient to state a claim for malicious prosecution. Under Illinois law, a malicious prosecution claim contains the following elements: "(1) the commencement or continuation of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice on the part of defendant; and (5) damages resulting to the plaintiff." *Reynolds v. Menard, Inc.*, 850 N.E.2d 831, 837 (Ill. App. Ct. 2006). "[A] criminal proceeding has been terminated in favor of the accused when a prosecutor formally abandons the

proceeding via a *nolle prosequi,* unless the abandonment is for reasons not indicative of the innocence of the accused." *Swick v. Liautaud,* 662 N.E.2d 1238, 1242-43 (Ill. 1996). The plaintiff shoulders the burden to prove that the *nolle prosequi* entry indicates termination in his favor. *Id.* at 1243.

McCann and Kubish claim that Contorno has not met his burden to plead the necessary facts in support of his claim, including that the *nolle prosequi* was entered pursuant to his innocence. However, as discussed earlier, a full recitation of the facts or elements of a claim is unnecessary in federal court. *Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 714 (7th Cir. 2006) ("It is enough to name the plaintiff and the defendant, state the nature of the grievance, and give a few tidbits (such as the date) that will let the defendant investigate. A full narrative is unnecessary."); *see also Simpson v. Nickel*, 450 F.3d 303, 304 (7th Cir. 2006) (stating that the conclusion that "plaintiffs need not allege either the factual or legal 'elements' of a prima facie case" is applicable to any federal claim).

Count III of the FAC is entitled "State Law Claim for Malicious Prosecution Regarding Unlawful Possession of Open Alcohol and Obstruction of Police Officer." It alleges, among other things, that "McCann and Kubish engaged in malicious prosecution against Plaintiff," and that "Defendants's actions caused Lombard and Glenellyn [sic] Police Departments to make false charges against Plaintiff." FAC at ¶¶ 101 and 104. Because these allegations are sufficient to properly apprise McCann and Kubish of the malicious prosecution claim against them, the court denies their motion to dismiss that claim for failure to allege sufficient facts or elements of the claim.

**IV.      Conclusion**

For the reasons stated herein, the defendants' motions to dismiss [75-1, 78-1] are granted in part and denied in part. Counts II and V are dismissed with prejudice. McCann and Kubish's motion to dismiss Count III is denied. The McCann Defendants and Hessler and Cook's motions to dismiss Count I are denied. Hessler and Cook's motion to dismiss Count IV is granted in part and denied in part. Specifically, to the extent that Contorno's claim that he was "unreasonably searched and seized" is actually a false arrest claim based on allegedly planted evidence, it is barred by *Heck*. To the extent that Count IV alleges that the Hessler Defendants failed to inform him that a controlled substance had been found on him in June 2002, the motion to dismiss is denied.

**Date:   April 25, 2007**

Blanche M. Manning

**Blanche M. Manning**
**United States District Judge**